IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRCT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MARTOLF, | : | |
| | : | |
| Plaintiff, | : | |
| | : | 2:12-cv-01018 |
| v. | : | **ELECTRONICALLY FILED** |
| | : | |
| | : | |
| MAJOR LISA S. CHRISTIE, | : | |
| MAJOR CHARLES J. SKURKIS, | : | |
| MAJOR TERRY L. SEILHAMER, | : | |
| CAPTAIN FRANCIS J. HACKEN, | : | |
| CAPTAIN SHELDON A. EPSTEIN, | : | |
| CAPTAIN WILLIARD OLIPHANT, | : | |
| CAPTAIN BRADLEY D. ALLEN, | : | |
| And CPL. LOUIS M. REDA | : | |
| | : | |
| Defendants. | : | |

**Memorandum Opinion re: Defendants' Motion to Dismiss**
**(Doc. No. 6)**

**I. Introduction**

Presently before the Court is Defendants' Major Lisa S. Christie, Major Charles J. Skurkis, Major Terry L. Seilhamer, Captain Frances J. Hacken, Captain Sheldon A. Epstein, Captain Williard Oliphant, Captain Bradley D. Allen, and Cpl. Louis M. Reda's ("Defendants") Motion to Dismiss Plaintiff James Martolf's ("Plaintiff's") Complaint. Doc. No. 6. The parties' dispute centers on the disciplinary actions of Defendants, members of the Pennsylvania State Police, towards Plaintiff, an employee of the Pennsylvania State Police.

On July 19, 2012, Plaintiff filed a one count Complaint alleging that Defendants violated his First and Fourteenth Amendment rights by: (1) implementing retaliatory action in response to lawsuits and grievances that Plaintiff filed while acting in his official capacity as an employee of the Pennsylvania State Police; (2) interfering with Plaintiff's familial affairs and private

1

relationships with the intent to harm him and his family; and (3) instituting a series of investigations that violated Plaintiff's Fourteenth Amendment Substantive Due Process Rights. *Id*. ¶¶ 44-50. On September 14, 2012, Defendants filed a Motion to Dismiss all causes of action that arose under Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Doc. No. 6. After careful consideration of the Motion to Dismiss and Brief in support thereof (doc. nos. 6 and 7), and Plaintiff's Response in opposition thereto (doc. no. 11), for the reasons that follow, Defendants' Motion to Dismiss (doc. no. 6) will be **GRANTED in PART and DENIED in PART.**

## II. Factual Background

Accepting Plaintiff's factual allegations as true for purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff is a Trooper for Pennsylvania State Police. Doc. No. 1, ¶ 7. He is stationed at the Washington Barracks in Washington County, Pennsylvania. *Id*. ¶ 12. On July 19, 2010, Plaintiff allegedly made a comment to Defendant Cpl. Reda, in the presence of Sgt. David Zimak, regarding an ongoing Internal Affairs Division ("IAD") investigation. *Id*. ¶ 9. In response, Defendant Reda contacted the IAD and accused Plaintiff of intentionally attempting to interfere with the investigation. *Id*. ¶ 10. Later, that same day Defendant Captain Epstein placed Plaintiff on Restricted Duty Status. *Id*. ¶ 12. The Restricted Duty Status included a restriction stating "Plaintiff cease any and all contact and communication (including third party contact) with any and all Members of Washington Station whether, on or off duty." *Id*. ¶ 12. According to the Complaint, this order allegedly interfered with Plaintiff's professional and personal friendships, and prohibited Plaintiff from inviting friends and co-workers to his wedding scheduled to occur on August 14, 2010. *Id*. ¶ 13.

On July 20, 2010, Lt. Jones (from the IAD) interviewed Sgt. Zimak regarding the allegations against Plaintiff. *Id*. ¶ 18. Sgt. Zimak insisted that Plaintiff's comments were merely made in gest, and should not have been taken seriously. *Id*. On July 29, 2010, Plaintiff received correspondence from Defendant Epstein granting Plaintiff permission to have contact with personnel at the Washington Barracks on the day of his wedding (August 14, 2010). *Id*. ¶ 20. Consequently, Plaintiff was prohibited from contacting anyone from the Washington Barracks prior to that day. *Id*. In response, Plaintiff sent correspondence to Defendant Major Christie suggesting Defendant Epstein's restrictions were overbroad and a violation of his First Amendment Rights to free speech and free association. *Id*. ¶ 21. On August 4, 2010, Defendant Christie granted Plaintiff permission to have contact with personnel at the Washington Barracks as of August 13, 2010 (one day before Plaintiff's wedding). *Id*. ¶ 23.

Two weeks later, on September 1, 2010, Plaintiff was removed from Restricted Duty Status. *Id*. ¶ 24. On September 7, 2010, Plaintiff received a Pre-Discipline Summary Report from Defendant Epstein indicating he was personally responsible for adjudicating Plaintiff's IAD investigation, and that he was considering issuing Plaintiff a Disciplinary Action Report. *Id*. ¶ 25. Plaintiff objected to Defendant Epstein being the adjudicator of the IAD investigation against Plaintiff, on the basis of conflict of interest, *Id*. ¶ 26., because Plaintiff had previously filed two unfair labor practice law actions against him. *Id*. Nevertheless, on October 18, 2010, Defendant Epstein adjudicated Plaintiff guilty in a Disciplinary Action Report for interfering with an IAD investigation. *Id*. ¶ 29. On February 4, 2011, Defendant Hacken issued Plaintiff a one day suspension, without pay. *Id*. ¶ 30. This suspension was served on February 25, 2011. *Id*. ¶ 35. On September 1, 2011, the grievance committee vacated Plaintiff's discipline. *Id*. ¶ 36. Plaintiff remains employed by the Pennsylvania State Police.

**III. Standard of Review**

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits.

4

*Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**IV. Discussion**

Plaintiff's Complaint contains one count; however, three separate causes of action are included within that single count. The Court will address each of these causes of action *seriatim*.

**A. Plaintiff Does Not State a Cause of Action for Denial of Right to Petition Under the First Amendment**

Defendants first argue that Plaintiff's grievances and lawsuit do not address matters of public concern, and are not actionable under 42 U.S.C § 1983. Doc. No. 6, 4. In the recent landmark decision of the United States Supreme Court, *Borough of Duryea v. Guarnieri*, the Court held that the "Petition Clause" of the First Amendment protects the right of individuals to appeal to courts and other forums established by the government for resolution of disputes, 131 S.Ct. 2488, 2494 (2011). "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Id. Duryea* further held that the interpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right. *Id.* at 2495.

The United States Supreme Court has concluded that the "matter of public concern" framework governing claims raised pursuant to the Speech Clause must also be used to resolve claims raised pursuant to the "Petition Clause." When a public employee petitions as a citizen

5

on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs. *Pickering v. Bd. of Ed. of Twp. High School Dist. 205*, 391 U.S. 563, 568 (1968). If that balance favors the public employee, the employee's First Amendment claim will be sustained. *Duryea*, 131 S.Ct. at 2500. If the interference with the government's operations is such that the balance favors the employer, the employee's First Amendment claim will fail, even though the petition is on a matter of public concern. *Id.*

A petition that "involves nothing more than a Complaint about a change in the employee's own duties" does not relate to a matter of public concern, and accordingly "may give rise to discipline without imposing any special burden of justification on the government employer." *Id.* (citing *United States v. Treasury Empl.*, 513 U.S. 454 (1995)). Thus, a Complaint must show that the Petition in question concerns a matter beyond the employment context. The right of a public employee under the "Petition Clause" is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts. *Id.*

Interpreting *Duryea*, the United States District Court for the Middle District of Pennsylvania recently held that grievances filed by Troopers are not entitled to any additional protections under the "Petition Clause." *Pa. State Troopers Ass'n v. Pawlowski*, 2011 WL 4592786, *4 (M.D. Pa. Sept. 30, 2011). The Court found that grievances similar to the ones at issue in the case at bar were not matters of public concern but instead were private employment matters that were not protected by the "Petition Clause." *Id.*

In the *sub judice*, Plaintiff's alleged petitioning activity relates to matters best characterized as private employment disputes, rather than petitions filed in an effort to "advance a political or social point of view beyond the employment context." *Id.* Plaintiff alleges that

6

Defendants retaliated against him for having exercised his First Amendment rights under the "Petition Clause." These allegations, to the extent they are described, deal specifically with employment. They are thus not afforded protection from the First Amendment Petition Clause, and must be dismissed.

Further, Plaintiff's allegations do not relate to a legitimate matter of public concern. Examples of a legitimate matter of public concern would be the safety of pepper spray, the condition of sidewalks, or how evidence is being stored. *Cf. Watters v. City of Philadelphia*, 55 F.3d 886, 895 (3d Cir. 1995). Plaintiff contends that Defendants' actions were implemented with the intent to vindictively injure Plaintiff on the day of his wedding. However, Plaintiff's argument that marriage is a matter of public concern is unconvincing. "When a public employee sues a government employer under the First Amendment, the employee must show that he or she spoke as a citizen on a matter of public concern." *Connick v. Myers*, 461. U.S. 138, 147 (1983). Whether an employee's speech addresses a matter of public concern is determined by the content, form, and context of the given statement. *Id.* at 148. If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id*. at 147. The Courts have long recognized matrimony as an intimate and exclusive act between a man and a woman. *See Griswold v. Connecticut*, 381 U.S. 479 (1965). It is contradictory to say that the bonds between two individuals are private, while at the same time a matter of public concern. Accordingly, Plaintiff has not pled sufficient facts to state a claim that Defendants violated his "Right to Petition."

### B. Plaintiff Does State a Cause of Action for Denial of Freedom of Association

Contrary to Defendants' averments, Plaintiff has pled sufficient facts that Defendants can be held liable for interference with his Right to Association. An individual's "freedom to associate" has been referred to in two distinct senses: (1) to protect against government interference with an individual's autonomy to establish and maintain intimate or private relationships and (2) to associate for the purpose of participating in protected speech or religious activities. *Bd. of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). It has long been recognized "that because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1983). Although the precise boundary of this protection is not a bright line, private and intimate associations afforded constitutional protection include marriage, childbearing, childrearing, cohabitation with relatives, and the raising and educating of children. *Id*. at 619.

The United States Supreme Court, however, has not limited First Amendment protections to familial relationships. Instead, the Supreme Court has found that "the First Amendment protects those relationships that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thought, experiences, and beliefs but also distinctively personal aspects of one's life." *Id*. at 620. To determine whether an association should be protected, Courts must evaluate relevant factors such as "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Id*. In *Rode v. Dellarciprete*, the United States Court of Appeals for the Third Circuit further explained that "only relationships 'distinguished by such attributes as relative

smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship' are like to implicate protections." 845 F.2d 1195, 1204-05 (3d. Cir. 1988)(quoting *Roberts*, 468 U.S. at 620).

Plaintiff alleges that restrictions imposed upon him during the course of an IAD investigation violated his freedom to associate. Doc. 1, ¶ 12. He contends that Defendants engaged in retaliatory harassment to deter Plaintiff from associating with his colleagues and friends. *Id*. While many Courts have concluded that friendships fall outside the scope of the First Amendment, such decisions are fact based. *See Rhode*, 845 F.2d at 1205. It is determinative upon facts whether a specific relationship warrants constitutional protection. *Roberts*, 468 U.S. at 620; *See Rhode*, 845 F/2d at 1205. In the case at bar, Plaintiff was allegedly prohibited from associating with friends and colleagues up until the day before his wedding. Whether or not Plaintiff's relationship with these individuals falls within the protections of the First Amendment rests on an evaluation of the factors listed within *Roberts*. *Id*. Accordingly, Plaintiff has pled sufficient facts to state a claim that Defendants violated his Right to Association.

### C. Plaintiff Does State A Cause of Action for Violation of His Fourteenth Amendment Rights to Substantive Due Process

Lastly, Plaintiff has alleged generally that his Fourteenth Amendment rights to Substantive Due Process were violated when certain Defendants instituted an Internal Affair investigation of him. Doc. No. 1. While Courts should not entertain Substantive Due Process claims where a particular Amendment "provides an explicit textual source of constitutional protection," i.e., the First Amendment, *Albright v. Oliver*, 510 U.S. 266 (1994), the Court, at this juncture, will refrain from dismissing the claim brought pursuant to the Fourteenth Amendment.

## V. Conclusion

In sum, Plaintiff has stated a claim for interference with his Right to Association under the First Amendment, as well as pled sufficient facts to state a claim for violation of his Fourteenth Amendment Substantive Due Process Rights. Plaintiff has not pled sufficient facts to state a claim for violation of his Right to Petition.

Accordingly, Defendants' Motion to Dismiss (doc. no. 6) will be **GRANTED in PART and DENIED in PART**.

An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties