IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRCT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MARTSOLF, | : | |
| | : | |
| Plaintiff, | : | |
| | : | 2:12-cv-01018 |
| v. | : | **ELECTRONICALLY FILED** |
| | : | |
| MAJOR LISA S. CHRISTIE, | : | |
| MAJOR CHARLES J. SKURKIS, | : | |
| MAJOR TERRY L. SEILHAMER, | : | |
| CAPTAIN FRANCIS J. HACKEN, | : | |
| CAPTAIN SHELDON A. EPSTEIN, | : | |
| CAPTAIN WILLIARD OLIPHANT, | : | |
| CAPTAIN BRADLEY D. ALLEN, | : | |
| And CPL. LOUIS M. REDA | : | |
| | : | |
| Defendants. | : | |

**Memorandum Opinion on Summary Judgment**

**I.      Introduction**

This is a civil rights action. Plaintiff, is an employee/member of the Pennsylvania State Police (PSP), and brings this action against numerous other employees of the PSP claiming constitutional violations for disciplinary actions taken against him. Plaintiff filed a one count Complaint alleging that Defendants violated his First and Fourteenth Amendment rights by: (1) implementing retaliatory action in response to lawsuits and grievances that Plaintiff filed while acting in his official capacity as an employee of the Pennsylvania State Police; and (2) interfering with Plaintiff's familial affairs and private relationships with the intent to harm him and his family. Doc. No. 1. Defendants filed a Motion to Dismiss all causes of action that arose under Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which this Court granted in part and denied in part. Doc. Nos. 14-15. The Court permitted only those portions of the

1

Complaint relating to Plaintiff's First and Fourteenth Amendment claims for freedom of association/substantive due process to proceed to discovery. *Id.*

Currently pending before this Court is Defendants' Motion for Summary Judgment (doc. no. 28), and Plaintiff's Response in Opposition thereto (doc. no. 35). After careful consideration of the Motion, and Response in Opposition thereto (doc. no. 35), this Court will grant Defendants' Motion for Summary Judgment.

## II. Factual Background

Judging the facts in the light most favorable to Plaintiff, the undisputed material facts[1] are as follows:

Plaintiff is a Sergeant with the Pennsylvania State Police with over 24 years of service, and is stationed at Troop B in Washington County, Pennsylvania. Doc. No. 1, ¶ 7; see also Doc. No. 31-1 and Doc. No. 34, ¶ 1. On July 19, 2010, at the beginning of his scheduled work hours of 8:00 a.m. to 4:00 p.m., Plaintiff made a comment to Defendant Cpl. Reda, in the presence of Sgt. David Zimak, regarding an ongoing Internal Affairs Division ("IAD") investigation. *Id*. ¶ 9; Doc. No. 31-1 at pgs. 50-51. The focus of the IAD investigation concerned allegations by Defendant Cpl. Reda that he was injured, on June 30, 2010, when Lieutenant Hermick picked him up in a bear hugging motion, in a manner which Plaintiff describes as "horseplay." Doc. No. 34 at ¶ 6. As a result of that investigation, Lieutenant Hermick had been placed on restricted duty and had been temporarily assigned to a barracks outside of Washington, Pa. Doc. No. 31-1 at pgs. 49 and 59. Plaintiff was on vacation from the Washington barracks,

---

[1] The parties have failed to file a Joint Concise Statement of the Material Facts, as required by the Case Management Order (CMO) in this case. Doc. No. 18. In the interests of efficiency, however, instead of striking the opposing parties factual materials, the Court has gleaned the following operative facts.

however, on the day that the incident between Lieutenant Hermick and Defendant Cpl. Reda occurred. *Id.* at 50.

During the July 19, 2010 conversation between Plaintiff, Defendant Cpl. Reda, and Sgt. David Zimak, Plaintiff stated to Defendant Cpl. Reda, in an open, joking fashion, that he (Reda) should contact co-defendant, Major Christie, who was the Department Disciplinary Officer, to let her know what happened between Reda and Hermick so that she could release Lt. Hermick from investigatory restrictions. Doc. No. 31-1, pp.52-54.

In response, Defendant Reda contacted the IAD and accused Plaintiff of intentionally attempting to interfere with the investigation. *Id*. ¶ 10. Later in the day on July 19, 2010, Defendant Troop Captain Epstein placed Plaintiff on Restricted Duty Status. *Id*. ¶ 12. Doc. No. 34 at ¶ 8-9. The Restricted Duty Status included a (temporary) restriction that "Plaintiff cease any and all contact and communication (including third party contact) with any and all Members of Washington Station whether on or off duty." *Id*. ¶ 12. Doc. No. 34 at ¶ 8. According to Plaintiff, this order allegedly interfered with his professional and personal friendships, and prohibited Plaintiff from inviting twenty (20) friends and co-workers to his wedding scheduled to occur on August 14, 2010.[2] *Id*. ¶ 13. Doc. No. 34 at ¶ 18.

On July 20, 2010, Lt. Jones (from the IAD) interviewed Sgt. Zimak regarding the allegations against Plaintiff. *Id*. ¶ 18. Sgt. Zimak insisted that Plaintiff's comments were merely made in gest, and should not have been taken seriously. *Id*. On July 29, 2010 (memo dated July 27, 2010), Plaintiff received correspondence from Defendant Epstein granting

---

2 In Plaintiff's Counterstatement of Facts, he advances several factual assertions that he was retaliated against, but the Court has not included any facts related thereto, having prior ruled in this Memorandum Opinion on the Motion to Dismiss that said claims were not cognizable as constitutional violations, but rather, evidence private employment matters not protected by the Petition Clause of the First Amendment. Doc. No. 34; Doc. No. 14 at pg.5-7.

3

Plaintiff permission to have contact with personnel at the Washington Barracks on the day of his wedding (August 14, 2010), with the exception of Corporal Reda and Lieutenant Hermick. *Id*. ¶ 20; Doc. No. 31 at ¶ 19. Consequently, Plaintiff was prohibited from contacting anyone from the Washington barracks prior to that day. *Id*. In response, Plaintiff sent correspondence to Defendant Major Christie suggesting Defendant Epstein's restrictions were overbroad and a violation of his First Amendment Rights to free speech and free association. *Id*. ¶ 21. On August 4, 2010, Defendant Christie granted Plaintiff permission to have contact with personnel at the Washington Barracks as of August 13, 2010 (one day before Plaintiff's wedding). *Id*. ¶ 23.

Plaintiff was married on August 14, 2010 and the wedding ceremony and reception took place at his wife's farm in Washington County. Doc. No. 31 at ¶ 15. Plaintiff sent written wedding invitations to his family and friends who were not co-workers, *Id*. at ¶ 16; however, he stated as his deposition that he did not and never had planned to send written invitations to co-workers at the PSP. *Id*. at ¶ 17. Rather, it was Plaintiff's intention to put a sign-up sheet in the patrol room entrance area of the Troop B headquarters in Washington, Pa, approximately two (2) weeks in advance of the wedding. *Id*.; Doc. No. 34 at ¶ 19-20. The sign-up sheet could be filled in by anyone at the Troop who wanted to attend the wedding; however, because he was unable to enter the Washington barracks, no sign-up sheet was posted. *Id*. at ¶ 17. Corporal Bova, Sergeant Zimak and Trooper Christy of the Washington Troop attend Plaintiff's wedding. Cpl. Bova was the best man, Sergeant Zimak helped with table set-up, and Trooper Christy helped with obtaining catering. *Id*. at ¶ 24.

Two weeks later, on September 1, 2010, Plaintiff was removed from Restricted Duty Status. *Id*. ¶ 24. On September 7, 2010, Plaintiff received a Pre-Discipline Summary Report

from Defendant Epstein indicating he was personally responsible for adjudicating Plaintiff's IAD investigation, and that he was considering issuing Plaintiff a Disciplinary Action Report. *Id*. ¶ 25. Plaintiff objected to Defendant Epstein being the adjudicator of Plaintiff's IAD investigation, *Id*. at ¶ 26., because Plaintiff had previously filed two unfair labor practice law actions against him, and according to Plaintiff, would be a conflict of interest. *Id*. On October 18, 2010, Defendant Epstein adjudicated Plaintiff guilty in a Disciplinary Action Report for interfering with an IAD investigation. *Id*. ¶ 29. On February 4, 2011, Defendant Hacken issued Plaintiff a one day suspension, without pay. *Id*. ¶ 30. This suspension was served on February 25, 2011. *Id*. ¶ 35. On September 1, 2011, after Plaintiff filed a grievance through the union, the grievance committee vacated Plaintiff's discipline. *Id*. ¶ 36. Plaintiff remains employed by the Pennsylvania State Police.

### III. Summary Judgment Standards

"Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for

5

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson* and *Celotex Corp.*).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the re, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. Discussion

### A. Plaintiff's Right to Freedom of Association Is Not Infringed

Plaintiff alleges that his restrictive duty status prevented him from properly planning his wedding and bachelor party, injured his marriage ceremony, and "emotionally damage[d] him, his wife, and his family." Doc. No. 34 at ¶ 25. However, even when construing the facts in the light most favorable to Plaintiff, his claims falls far short of establishing that any of these Defendants interfered with his right to freedom of association.

An individual's "freedom to associate" has been referred to in two distinct senses: (1) to protect against government interference with an individual's autonomy to establish and maintain intimate or private relationships ("intimate association"), and (2) to associate for the purpose of participating in protected speech or religious activities ("expressive association"). *Bd. of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987).

1. **"Intimate Association"**

It has long been recognized "that because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1983).

Although the precise boundary of this protection is not a bright line, private and intimate associations that are afforded constitutional protection include marriage, childbearing, childrearing, cohabitation with relatives, and the raising and educating of children. *Id*. at 619. The concept of personal liberty includes a person's right to associate with their relatives. It has been construed to protect a person's right to marry, procreate, associate with family members, to rear children, and engage in consensual sexual relationships. *Schlarp v. Dern*, 610 F. Supp.2d. 450, 461-62 (W.D. Pa. 2009). The Constitution, however, does not recognize a generalized right of social association. *Kirby v. Loyalsock Township School Distr*., 837 F.Supp.2d 467, 474 (M.D. Pa. 2011)(citations omitted).

The United States Supreme Court has not gone so far as to limit First Amendment protections to familial relationships. Instead, the Supreme Court has found that "the First Amendment protects those relationships that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thought, experiences, and beliefs, but also distinctively personal aspects of one's life." *Id*. at 620. To determine whether an association should be protected, Courts must evaluate relevant factors such as "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Id*.

In *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988), the United States Court of Appeals for the Third Circuit explained that "only relationships 'distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship' are likely to implicate protections." 845 F.2d at 1204-05 (quoting *Roberts*, 468 U.S. at 620). Relationships including husband and wife, parent and children, and cohabitating members of the same family are the types of relationships that are protected by the First or Fourteenth Amendment. *Schlarp*, 610 F.Supp.2d at 462.

In *Pi Lambda Phi Fraternity*, 229 F.3d 435 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit affirmed the District Court's grant of summary judgment on the question of whether a fraternity chapter violated its members constitutional right to freedom of association when the university stripped the chapter of its recognized status and sued the university after several of its members were arrested in a drug raid at the fraternity house. The Court of Appeals, after analyzing the chapter's size, lack of selectivity, and lack of seclusion in its activities, found that the relationships of fraternity "brothers" lack the "essential characteristics of constitutionally protected intimate association." *Id.* at 442.

Recently, in *Lord v. Erie County*, 476 Fed. Appx. 962 (3d Cir. 2012), the United States Court of Appeals for the Third Circuit, affirmed the District Court and held that a county corrections department's anti-fraternization policy (with inmates) did not violate a discharged officer's First Amendment right of association. In that case, the Court of Appeals, in finding that the mere friendship with the inmate was not entitled to constitutional protection, stated as follows:

8

> We agree with the District Court that the First Amendment has nothing to offer Lord in this case because he was merely friends with Underhill. During his deposition, Lord never referred to Underhill as anything other than his friend; the record indicates that their relationship only extended to socializing, talking on the phone, and previously co-habiting an apartment. Nor is there any evidence that this relationship was characterized by the sharing of "a special community of thoughts, experiences, and beliefs [, as well as] distinctively personal aspects of one's life." *Roberts*, 468 U.S. at 619–20, 104 S.Ct. 3244. Indeed, if the relationship between a plaintiff and her brother-in-law does not merit First Amendment protection, we cannot see how this one does. See *Rode,* 845 F.2d at 1204–05. Consequently, there is no basis from which a reasonable jury could infer that Lord's constitutional rights were burdened by the prison's anti-fraternization policy, and the claim was properly dismissed.

476 Fed. Appx. 962, *3.

Applying the relevant factors such as size, purpose, selectivity, and exclusionary issues to the facts of this case yields the conclusion that Plaintiff's right of intimate association was not hampered. Plaintiff did not plan a small wedding, as evidenced by his plan to have a sign-up sheet that invited anyone to attend. Furthermore, Plaintiff's wedding was not selective. In fact, the restrictions placed upon Plaintiff did not even infringe his ability to invite members of the PSP to attend his wedding, and it did not infringe his ability to actually have these persons present at his wedding. Indeed, at least three of his co-employees did attend and participate in the wedding. Therefore, the size of the festivities, the lack of selectivity, and the lack of seclusion in the wedding ceremony (at the family farm), all support the conclusion that Plaintiff's claims lack the essential characteristics of constitutionally intimate associations. *Pi Lambda Phi Fraternity, Inc.*, 229 F.3d at 442.

As Defendants point out, and this Court agrees, Plaintiff alleges a factual scenario similar to that in *Schultz v. Wilson*, 304 Fed. Appx. 116 (3d Cir. 2008). In that case, a couple alleged that the Pennsylvania State Police took actions to end their wedding reception, on the

basis of racial motives. Among other theories put forth by Plaintiffs, they alleged that the Pennsylvania State Police Troopers who allegedly ended their receptions were acting in their capacity as state actors and had violated Plaintiffs constitutional right to freedom of association. Of import to the instant case, the Court of Appeals for Third Circuit unequivocally held that Plaintiffs' wedding reception was neither an "expressive" or an "intimate" association entitled to the protections of the First Amendment.

Plaintiff alleges that restrictions imposed upon him during the course of an IAD investigation violated his freedom to associate. Doc. 1, ¶ 12. He contends that Defendants engaged in retaliatory harassment to deter Plaintiff from associating with his colleagues and friends. *Id*. Viewing the facts in the light most favorable to Plaintiff, this Court concludes that that the relationships which Plaintiff claims were hampered undoubtedly fall outside the scope of the protections of the First Amendment. See *Rode*, 845 F.2d at 1205. To reiterate the statements of the United States Supreme Court in *Roberts*, "the Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse that would not apply to regulations affecting the choice of one's fellow employees." *Roberts*, 468 U.S. at 620. An analysis of the factors set forth under *Roberts* falls far short of presenting facts upon which a fact-finder could reasonably find that Plaintiff's constitutional rights were infringed through the actions of the Defendants, which temporarily prohibited him from associating with friends and colleagues up until the day before his wedding. And, again, to borrow the phrase from the Court of Appeals in the *Lord* case, if the First Amendment provides no protection to a plaintiff and her brother-in-law, the Court "cannot see how this one does."

2. **<u>"Expressive Association"</u>**

The right of expressive association, unlike the distinct right of intimate association, is grounded *only* in the First Amendment. *Schlarp v. Dern*, 610 F.Supp.2d at 462. To the extent that Plaintiff asserts claims that are grounded in his right of expressive association, the Court will also analyze his claims under an alleged violation of his right to expressive association.

In *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), the United States Supreme Court employed a three-step process to analyze expressive association claims (which roughly follows the analytical structure that the Supreme Court employed in *Roberts* and *Duarte*, discussed above). First, the Court determined whether the group making the claim engaged in expressive association. *Id.* at 648. Second, the Court analyzed whether the state action at issue "significantly burdened" the group's ability to advocate its viewpoints. *Id.* at 654. And third, the Court weighed the state's interest implicated in its action against the burden imposed on the associational expression to determine whether the state interest justified the burden. *Id.* at 655-656.

Of particular import here, the United States Court of Appeals for the Third Circuit has unequivocally held that social groups are not protected unless it engages in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance. *Pi Lambda Phi Fraternity v. University of Pittsburgh*, 229 F.3d 435, 444 (3d Cir. 2000).

Plaintiff's factual allegations, when construed in the light most favorable to him, fail to evidence any violation of his expressive right of association under the First Amendment. Critically, the restrictions placed upon Plaintiff had no impact on his ability to expressively associate with his group of fellow employees in the *actual* ceremony of his wedding. At most, he was restricted only in his wedding planning and/or his ability to discuss the wedding

11

ceremony prior to the day before his wedding. Therefore, the "group" at issue, if there even arguably is a "group," is nothing more than a social one that is not taking a stance on an issue of public, political, social or cultural importance. Therefore, it is not an expressive association entitled to the protections of the First Amendment.

### B. Plaintiff's Due Process Rights Are Not Infringed

As for Plaintiff's claim of an alleged violation of his Fourteenth Amendment right to procedural due process, as Defendants point out, and this Court agrees, the grievance process of which Plaintiff availed himself pursuant to the Collective Bargaining Agreement (and included a final resolution of the matters contained therein) was sufficient to satisfy due process requirements. See *Kosciolek v. Wilkes-Barre Fire Fighters Ass'n Local 104*, 2006 WL 3742700 (M.D. Pa. 2006)("in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, those procedures satisfy due process requirements'").[3]

Plaintiff's substantive due process claim also fails. Plaintiff sets forth no separate nexus of facts that give rise to his substantive due process claim. Instead, his substantive due process claim arises directly from the alleged violation of his right to freedom of association. As the Court has found that Defendants did not violate Plaintiff's right to freedom of association, his substantive due process claim must fail as well. *Ruegsegger v. Jefferson Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 2d 1247, 1259 (D. Colo. 2001) (substantive due process claim automatically fails when the underlying right is found not to have been violated); *Cleversy v.*

---

[3] In Plaintiff's summary judgment briefing, he attempts to amend his pleadings to now include a Fourteenth Amendment Equal Protection claim. Plaintiff's new theory of liability is beyond belated, and the Court will deny any such request to amend his pleadings under Fed. R. Civ. Pr. Rules 15 and 16. Furthermore, Plaintiff has proffered no evidence to support his Equal Protection claim other than his own declaration that other employees were treated differently as a result of other IAD investigations.

*Perry Twp.*, 1991 WL 328021 (N.D. Ohio Oct. 8, 1991) (same); *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998); *Baker v. McCollan,* 443 U.S. 137, 140 (1979).

## V.     Conclusion

For the reasons set forth hereinabove, this Court finds that, when viewing the facts in the light most favorable to Plaintiff, he fails to present any evidence from which a reasonable jury could conclude that he suffered a violation of his Constitutional rights under the First and Fourteenth Amendment. Accordingly, Defendants' Motion for Summary Judgment will be GRANTED. An appropriate Order follows.

SO ORDERED this 16th day of April, 2013.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record